## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MISSOURI

| | |
|---|---|
| ECO-SITE II, LLC,      ) | |
|      ) | |
|      **Plaintiff,**      ) | |
|      ) | |
| **v.**      ) | |
|      ) | |
| **BOARD OF ADJUSTMENT OF THE**      ) | **Case No. _____** |
| **CITY OF ST. LOUIS**      ) | |
|      ) | |
| **Serve:  Mary Hart Burton,**      ) | |
|      **Zoning Administrator**      ) | |
|      **1200 Market Street, Room 314**      ) | |
|      **St. Louis, Missouri 63103**      ) | |
|      ) | |
|      **Defendant.**      ) | |

## COMPLAINT

COMES NOW Plaintiff Eco-Site II, LLC ("Eco-Site" or "Plaintiff), by and through its attorneys, and for its Complaint against Defendant the Board of Adjustment of the City of St. Louis ("Board"), states and alleges as follows:

## NATURE OF THE MATTER

1. This is an action for declaratory, injunctive and mandamus relief pursuant to 47 U.S.C. §332 and 28 U.S.C. §2201 to establish that the City's denial of Plaintiff's request to construct a new wireless communications facility ("WCF") consisting of a telecommunications tower and base transceiver stations violates the Federal Telecommunications Act of 1996 (the "TCA") and Missouri's Uniform Wireless Communications Infrastructure Deployment Act. Specifically, the Board violated state and federal 'shot clock' statutes and regulations by failing to act on the subject application within the required prescribed time. *See* 47 U.S.C. § 332 *and* Mo. Rev. Stat. § 67.5096(4), and rules adopted thereunder. The Board also violated state and

federal law in failing to base its denial on substantial evidence in the record (*see* 42 U.S.C. § 332(c)(7)(B)(iii)) and by engaging in prohibited acts during review of the application. *See* Mo. Rev. Stat. § 67.5094.

## PARTIES

2.      Eco-Site is, and at all times relevant hereto has been, a Delaware limited liability company registered to do and doing business in the State of Missouri.

3.      The Board is the duly constituted board of adjustment authorized by Chapter 89 of the Revised Statutes of Missouri and Section 26.84.010 of the City's Code.

## JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1331 and §1367 because these claims arise under the laws of the United States, specifically 47 U.S.C. §332(c)(7).

5.      This case presents an actual controversy under Article III of the United States Constitution and 28 U.S.C. §2201 because the City has violated Plaintiffs' federal rights under the TCA.

6.      Venue is proper in this Court because the City is in this judicial district, the events and/or omissions giving rise to this action occurred in this judicial district, and the property affected is located within this judicial district.

7.      The TCA provides that "the Court shall hear and decide such action on an expedited basis."  47 U.S.C. § 332(c)(7)(B)(v).

67258746.4

## FACTS COMMON TO ALL COUNTS

8.     Eco-Site is in the wireless telecommunications industry and places, constructs, modifies, operates and manages personal wireless services and telecommunication facilities across the United States.

### WIRELESS COVERAGE GAPS

9.     Wireless communications systems rely on an overlapping and interconnected network of wireless facilities, or WCF's.  WCFs are comprised of radio antennas together with other necessary electronic equipment that receive and transmit low-power radio signals to and from mobile wireless devices, thereby facilitating wireless communications.

10.    For the system to function without "gaps" in radio signal coverage and network capacity, the WCF's must be properly located, installed and functioning.  If there is no properly functioning WCF within a given area, wireless service will be significantly impaired for customers within that area, and wireless customers who travel into the area will experience unacceptable levels of wireless service, including failed attempts, busy signals, dropped calls and lack of data transmission.

11.    To maintain effective, continuous, uninterrupted service to a wireless telecommunications customer, there must be a continuous interconnected series of WCFs.  The antennas must be located on structures of sufficient height, such as communication towers, to transmit and receive radio signals.  Where no such structures exist, new communication towers may be needed.

12.    Any tower component of a WCF must be located within a specific geographical area so that it can provide line-of-sight communications with wireless devices and properly interact with other WCFs to provide reliable wireless coverage through a network capable of

handing off communications from one WCF to another as a user travels through an area.  Each WCF has a limited maximum coverage area, the extent of which varies depending upon several factors, including the antenna height, local topography, configuration of various existing structures and population densities.

13.     In the present case, radio frequency ("RF") engineers of a major FCC-licensed carrier determined that a significant gap in its wireless coverage and network capacity exists in and around certain areas of St. Louis, Missouri.

14.     The carrier's RF engineers defined a geographic area, called a "Search Area" within which the new WCF should be located.

15.     To remediate this significant wireless gap, Eco-Site was engaged to identify potential sites to construct a new wireless communications facility within the Search Area and construct the same.

16.     Eco-Site retained a telecommunications consultant, Cellective Solutions, to locate a site within the Search Area to construct a WCF and to obtain any needed permits.

17.     Following an exhaustive search of potential properties within the Search Area, Cellective Solutions identified a property located at 3815 Oregon Avenue, St. Louis, Missouri 63118 (the "Proposed Site") as a potential option within the Search Area.

18.     The carrier's RF engineers determined that a new WCF on the Proposed Site would fill the wireless gap in its service.

19.     The proposed tower ("Proposed Tower") is a 100-foot stealth communication tower structure, with antennas and related appurtenances.

67258746.4

**THE PROPOSED SITE**

20.     Upon its construction, multiple FCC-licensed carriers would be allowed the opportunity to lease space on the Proposed Tower to remediate gaps in their respective service coverage areas.

21.     The Proposed Site's applicable zoning designation is "B" – Two Family Dwelling Unit and is currently a vacant lot.

22.     Under the City of St. Louis's Municipal Code (the "Code"), Eco-Site is restricted from constructing support structures, such as communication towers, taller than forty-five feet on properties classified as  Zone B – Two family dwelling Districts. *See* Code §§ 26.20.050 and 26.24.040.

23.     While the Proposed Site is zoned for residential uses, it was previously used for and is currently taxed as commercial property.

24.     The areas to the east, south and west of the Proposed Site are also zoned and developed for residential use.

25.     As part of the application review process, Eco-Site submitted testimony and evidence stating that the Property Site was chosen because it was a well-positioned to cover gaps in wireless coverage in the neighborhood, the landowner consented to building the structure, and an appraisal company stating that there was no correlation between installation of cell towers and the value of nearby residential structures.

**MISSOURI UNIFORM WIRELESS COMMUNICATIONS
INFRASTRUCTURE DEPLOYMENT ACT**

26.     In August 2014, Missouri's Uniform Wireless Communications Infrastructure Deployment Act ("Act" or "Missouri Siting Act"), Mo. Rev. Stat. §§ 67.5090, *et seq*. became effective.

5

27.     The Act serves to regulate and restrict the power of local governments related to approval of wireless telecommunication facility applications.

28.     Section 67.5096 of the Act, entitled Permitted Acts by Authority, limits a municipality to "one hundred twenty calendar days of receiving an application to construct a new wireless support structure or within such additional time as may be mutually agreed to by an applicant" to review the application, make a final decision **and** advise the applicant in writing of its final decision. *Id.* at (4) (emphasis added). "If the authority fails to act on an application to construct a new wireless support structure within the one hundred twenty calendar days' review period specified under subsection 4 of this section or within such additional time as may be mutually agreed to by an applicant and an authority, the application shall be ***deemed approved***." *Id.* at (5). (Emphasis added).

29.     Section 67.5094 of the Act, entitled Prohibited Acts by Authority, prohibits a municipality from:

> (2) Evaluat[ing] an application based on certain criteria, such as the availability of other potential locations for the placement of wireless support structures or wireless facilities, including without limitation the option to collocate instead of construct a new wireless support structure or for substantial modifications of a support structure, or vice versa … ;

> (3) Dictat[ing] the type of wireless facilities, infrastructure or technology to be used by the applicant … ;

> … [or]

> (16) Impos[ing] any requirements or obligations regarding the presentation or appearance of facilities, including, but not limited to, those relating to the kind or type of materials used and those relating to arranging, screening, or landscaping of facilities if such regulations or obligations are **unreasonable**[.]

*Id.* (emphasis added).

67258746.4

## FEDERAL TELECOMMUNICATIONS ACT

30.     The TCA requires local governments to act within a reasonable period of time after an application is filed.   *See* 47 U.S.C. § 332(c)(7)(B).   The Federal Communications Commission ("FCC") has definitively stated that under Section 332(c)(7)(B)(ii), a "reasonable period of time" for consideration of an application such as the one at issue in this case is 150 days.   *In re Petition for Declaratory Ruling to Clarify Provisions of Section 332(c)(7)(B)*, 24 F.C.C.R. 13994 (2009) ("FCC Order").

31.     Under the FCC Order, if final action is not taken on the application within 150 days, the delay would be presumptively unreasonable.  FCC Order at 51.

32.     In 2012, the U.S. Supreme Court ruled that the FCC Order was validly enacted and legally binding.  *City of Arlington, Texas, et al., v. Federal Communications Commission, et al.* 569 U.S. 290 (2013).

## APPLICATION REVIEW AND DECISION PERIOD

33.     On or about November 17, 2017, Eco-Site, through its agent, submitted an application for building permit to construct a new wireless support structure at the Proposed Site (the "Application"). At the time, the tower structure was planned to be 125 feet in height. (Application filed to Division of Building and Inspection).

34.     On or about November 27, 2017, the Building Commissioner sent a letter denying the Application and provided forms to appeal the decision to the Board.

35.     On December 5, 2017, Eco-Site filed its appeal to the Board.

36.     On January 23, 2018, the Board provided notice of its receipt of the appeal, and stated that such appeal would be heard by the Board at its meeting on February 7, 2018.

67258746.4

37.     At the February 7, 2019 Board hearing, a City Alderperson for the ward where the Proposed Site was located submitted a letter stating opposition to the approval and construction of the 125 foot tower structure.  During the hearing, Eco-Site requested a continuance of the hearing to allow for discussions with the Alderperson.

38.     The Board held several additional hearings over the ensuing months which were continued by mutual agreement of Eco-Site and the Board to allow for continued discussions between Eco-Site and the Alderperson whose ward the Proposed Site was located.

39.     Based on these discussions, the plans were revised to lower the tower structure to 100 feet and to change the design of the structure to a stealth design, whereby antennas were covered by panels; thereby substantially increasing the cost of construction.

40.     At a meeting on August 29, 2018, Eco-Site presented the plans with the revisions requested by the Alderperson with the intent of having the Board decide on the Application. During this meeting, the Board's attorney stated that Eco-Site should continue the meeting so that Eco-Site could update their Application with the revised information, which was thereafter granted.

41.     On September 12, 2018, Eco-Site submitted the new design for the Proposed Tower to the City planning department.

42.     At the next Board meeting, on October 17, 2018, various Board members evaluated the revised plans and questioned the design of the stealth panels and the construction of the legs of the Proposed Tower. Various Board members also evaluated the Application based on the availability of other potential locations. At the conclusion of the meeting, the presiding Board member announced that he "consider[ed] this case as having been heard" and called the

Board into recess to deliberate the proposal. At the conclusion of the deliberation Eco-Site was informed that the hearing was continued to allow the Board to confer with the Alderperson.

43.     Eco-Site was not asked by the Board and did not give its consent to the continuance.

44.     It was not until January 2, 2019, when the Board "resumed" the hearing.

45.     At this hearing, the Board voted and denied the Application.

46.     On January 16, 2019, the Board issued its formal written decision denying the Application, thereby closing out its Section 67.5096 review and decision process. *See attached Exhibit A.* (Written Denial)

## THE WRITTEN DENIAL

47.     In its denial, the Board stated as follows:

It is the decision of the Board of Adjustment that the Appellant failed to establish and present evidence that a practical difficulty exists to warrant the granting of an area variance to the Zoning Code to permit Cellective Solutions [Eco-Site's agent] to erect an antenna tower and ground equipment, per plans, at 3815 Oregon Avenue. Specifically, the Appellant failed to present any evidence that was specific to the character or circumstances of the property that limited the land being used for the purpose allowed in that zone. Applicant further failed to provide evidence that the granting of the variance would not alter the essential character of the locality. The Board, therefore, upholds the decision of the Building Commissioner to refuse to issue a permit at this time.

*Id.* at 5.

48. In the "Findings of Fact" section of the written decision, the Board included references to alternate locations for the Proposed Tower. *Id.* at 5, ¶24.

49. The Board also stated that Eco-Site did not present evidence that "carrying out the strict letter of the Zoning Code would result in an undue hardship or practical difficulty; therefore, granting an area variance … per plans … will be a detriment to the neighborhood." *Id.* at 5, ¶25.

9

50. The written decision did not provide any substantive evidence stating why the Board denied the Application, merely that Eco-Site did not provide enough evidence. *See generally id.*

## COUNT I – FAILURE TO ACT WITHIN THE REQUIRED SHOT CLOCK PURSUANT TO THE TCA AND THE MISSOURI SITING ACT

51. Plaintiff restates and incorporates by reference the preceding allegations above as if fully set forth herein.

52. Under the Missouri Siting Act, if the City "fails to act on an application to construct a new wireless support structure within the one hundred twenty calendar days' review period … or within such additional time as may be mutually agreed to by an applicant and an authority, the application shall be deemed approved." Mo. Rev. Stat. § 67.5096(4).

53. The 120-day clock starts on receipt of an "application to construct a new wireless support structure" unless otherwise mutually agreed to by an applicant and the City and Board. *Id.* at (4).

54. Within the 120-day period, the Board, must 1) review the application, 2) make its final decision to approve or disapprove of the application, and 3) advise the applicant in writing of its final decision. *Id.* at (4)(1-3).

55. "Application" is defined to include "a request submitted by an applicant to an authority to construct a new wireless support structure." Mo. Rev. Stat. § 67.5092(3).

56. If, during the review, the application is deemed incomplete, the applicant has thirty days to cure the deficiency. *Id.* at (4)(1). If the deficiency is cured within thirty days, the 120-day clock is not affected and continues from the date of initial receipt. *Id.*

57. The TCA requires that State or local governments must act on requests for personal wireless service facilities "within a reasonable period of time." 47 U.S.C. § 332(c)(7)(B)(ii).

10

58. The TCA itself does not preempt state and local laws establishing their own periods of time to respond and act on applications. *See generally* 47 U.S.C. § 332.

59. Under both the state and federal timing statutes, the City and Board were untimely in its denial of the Application.

60. While statutorily, the clocks start at the date of submission (federal) or receipt of the application (state), November 11, 2017, the parties entered into mutually agreed-upon continuances beginning on February 7, 2018 until the August 29, 2018 hearing. At that hearing, Eco-Site presented its Application for review to the Board and the shot clock re-started.

61. At the August 29, 2018 meeting, the Board asked Eco-Site to supplement its Application. Eco-Site did so within thirty day, and submitted the revisions on September 12, 2018. Therefore, Eco-Site cured any incompleteness within thirty days of receiving notice. *See* Mo. Rev. Stat. § 67.5092(4)(1).

62. Per the Missouri Siting rules:

> (a)   The  shot clock restarted at the end of the agreed upon continuance period on August 29, 2018.

> (b)   The Board did not complete its three tasks of: 1) reviewing the Application, 2) making a final decision, and 3) advising the applicant of the decision in writing until January 16, 2019. This was well beyond the statutorily prescribe 120 days.

63. Even using the date the revision was submitted – September 12, 2018 – the Board was still late in completing their three required tasks.

64. The Board review and decision-making process was an unreasonable amount of time, and the Board had a clear opportunity to vote on the matter at the October 17 hearing or shortly

after had they made a concerted effort to contact the Alderperson. Instead they waited until January 16, 2019 to finalize its decision-making process.

65. As the Board failed to meet both Missouri and federal shot clock requirements, it was unlawful for the Board to deny the Application after that time expired.

WHEREFORE, Plaintiff respectfully requests that this honorable Court:

(a)     Issue an Order requiring the Board to certify to this Court a true, full and complete copy of the record of the acts and procedures involved in the denial of the Application so that this Court may review the data and records and adjudicate upon the legality of said proceedings under the TCA and the Missouri Siting Act;

(b)     Issue an Order prohibiting the Board from denying the Application;

(c)     Issue an Order requiring the Board to complete the ministerial act of approving the Application;

(d)     Issue a writ of mandamus directing the Board to discharge its duties properly and to approve the Application; and

(e)     Provide for such other and further relief as the Court deems just and proper.

## COUNT II – FAILURE TO PROVIDE SUBSTANTIAL EVIDENCE PURSUANT TO THE TCA AND THE MISSOURI SITING ACT

66.     Plaintiff restates and incorporates by reference the preceding allegations above as if fully set forth herein.

67.     The TCA comprehensively addresses telecommunications policy and the development of facilities to provide telecommunications services throughout the United States.

67258746.4

The TCA restricts the authority of local governments to prevent the development of WCFs needed to provide adequate wireless communications services.

68.     The stated purpose of the TCA is "to promote competition and reduce regulations in order to secure lower prices and higher quality services for American telecommunications consumers and encourage the rapid deployment of new telecommunications technologies." (Preamble to the TCA).

69.     The TCA provides, in pertinent part, that:

> Any person adversely affected by any final action or failure to act by a State or local government or any instrumentality thereof that is inconsistent with this subparagraph may, within 30 days after such action, or failure to act, commence an action in any court of competent jurisdiction.  The court shall herein decide such action on an expedited basis.

47 U.S.C. §332(c)(7)(B)(v).

70.     The TCA also provides that "[a]ny decision by a State or local government or instrumentality thereof to deny a request to place, construct, or modify personal wireless services facilities shall be in writing and supported by substantial evidence contained in a written record." 42 U.S.C. §332(c)(7)(B)(iii).

71.     Plaintiff is a "person[s] adversely affected" as that term is used in 47 U.S.C. §332(c)(7)(B)(iii).

72.     Wireless telecommunications service is a "personal wireless service" for purposes of the TCA.  47 U.S.C. §332(c)(7)(C)(i).

73.     The TCA has been interpreted to vest courts of competent jurisdiction with authority to grant mandamus relief if such relief would be warranted under the circumstances.

74.     Based on the record before the City Council, the City's denial of the Application is not supported by substantial evidence and as such is a violation of the TCA.  In the Board's

13

written decision, the Board did not provide any substantial evidence contained in a written record showing why it was denying the Application. Instead, the Board only stated that Eco-Site failed to establish and present evidence without specific references to necessary absent material.

WHEREFORE, Plaintiff respectfully requests that this honorable Court:

(a)     Issue an Order requiring the Board to certify to this Court a true, full and complete copy of the record of the acts and procedures involved in the denial of the Application so that this Court may review the data and records and adjudicate upon the legality of said proceedings under the TCA;

(b)     Issue an Order prohibiting the Board from denying the Application;

(c)     Issue an Order requiring the Board to complete the ministerial act of approving the Application;

(d)     Issue a writ of mandamus directing the Board to discharge its duties properly and to approve the Application; and

(e)     Provide for such other and further relief as the Court deems just and proper.

## COUNT III – ACTION FOR INJUNCTION AND WRIT OF MANDAMUS PURSUANT TO THE MISSOURI UNIFORM WIRELESS COMMUNICATIONS INFRASTRUCTURE DEPLOYMENT ACT

75.     Plaintiff restates and incorporates by reference the preceding allegations above as if fully set forth herein.

76.     The Missouri Siting Act serves to regulate the power of local governments related to telecommunication facility applications.

77.     Section 67.5094 of the Act, entitled Prohibited Acts by Authority, a municipality

shall not:

> (2) Evaluate an application based on the availability of other potential locations
> for the placement of wireless support structures or wireless facilities, including
> without limitation the option to collocate instead of construct a new wireless
> support structure or for substantial modifications of a support structure, or vice
> versa; provided, however, that solely with respect to an application for a new
> wireless support structure, an authority may require an applicant to state in such
> applicant's application that it conducted an analysis of available collocation
> opportunities on existing wireless towers within the same search ring defined by
> the applicant, solely for the purpose of confirming that an applicant undertook
> such an analysis; for collocation to any certified historic structure as defined in
> section 253.545 , in addition to all other applicable time requirements, there shall
> be a thirty-day time period before approval of an application. During such time
> period, an authority shall hold one or more public hearings on collocation to a
> certified historic structure;
>
> (3) Dictate the type of wireless facilities, infrastructure or technology to be used
> by the applicant, including, but not limited to, requiring an applicant to construct a
> distributed antenna system in lieu of constructing a new wireless support
> structure;
>
> … [or]
>
> (16) Impos[ing] any requirements or obligations regarding the presentation or
> appearance of facilities, including, but not limited to, those relating to the kind or
> type of materials used and those relating to arranging, screening, or landscaping
> of facilities if such regulations or obligations are **unreasonable** ….

*Id*. at 67.5094 (emphasis added).

78.     The principle issues which appeared to lead to the denial of the Application were

the size and style of the Proposed Tower and the location of the Proposed Site.

79.     Specifically, the Board took issued with the Proposed Tower in its initial

monopole design, and then again when Eco-Site presented its stealth design. In order to satisfy

the requests of the Alderperson and alleviate concerns of the Board, Eco-Site sought assistance

from the Alderperson to enlist a local artist to paint panels on the Proposed Tower. This, in

effect, imposed an unreasonable requirement in the kind and type materials used to arrange the Proposed Tower and dictated a change in the type of tower used at the Proposed Site.

80.     The Board also made mention of alternate locations at several points during the hearing and in their written decision. This illustrates that the Board improperly evaluated the Application based on the availability of alternative locations.

WHEREFORE, Plaintiff respectfully requests that this honorable Court:

 (a) Issue an Order prohibiting the Board from denying the Application;

 (b) Issue an Order requiring the Board to complete the ministerial act of approving the Application;

 (c) Issue a writ of mandamus directing the Board to discharge its duties properly and to approve the Application; and

 (d) Provide for such other and further relief as the Court deems just and proper.

### COUNT IV – ACTION FOR DECLARATORY RELIEF UNDER THE FEDERAL DECLARATORY JUDGMENT ACT, 28 U.S.C. §§ 2201-2202

81.     Plaintiff restates and incorporates by reference the preceding allegations above as if fully set forth herein.

82.     A real, immediate, actual, justifiable, and substantial continuing controversy exists between Plaintiffs and the Board as to whether the denial of the Application violates the TCA.

83.     There is a bona fide, actual, present, and practical need for a declaration of Plaintiffs' right to proceed with the construction of the Proposed Tower at the Proposed Site.

84.     Plaintiffs' interests in the declaration of its rights are actual and adverse to those of the Board.

85.     All conditions precedent to the relief demanded herein have either been performed or have occurred.

86.     Requiring cell towers to be no taller than 35 feet would effectively negate cell phone technology and require use of more land for the construction of more towers as towers must be a minimum height to house multiple FCC-approved carriers. This is economically inefficient for everyone involved and an inefficient use of space already-crowded communities.

87.     Under St. Louis's Municipal Code, telecommunication companies are restricted from constructing towers and taller than thirty-five and/or forty-five feet (depending on the size of the side yard) in Zone B – Two family dwelling Districts. St. Louis, Missouri, Municipal Code §§ 26.20.050 and 26.24.040.

88.     As the Missouri Siting Statute states that municipalities shall not "impose any requirements or obligations regarding the presentation or appearance of facilities, … if such regulations or obligations are unreasonable," the municipal ordinance at issue is in direct conflict with state law.

WHEREFORE, Plaintiff respectfully requests that this honorable Court:

(a)     Declare that the Board's denial of the Application is not supported by substantial evidence in the written record in violation of the TCA;

(b)     Declare Plaintiff's right to proceed with the construction of the Proposed Tower on the Proposed Site pursuant to an approved Application; and

(c)     Provide such other and further relief as the Court deems just and proper.

67258746.4

Respectfully submitted,

POLSINELLI PC

By:  /s/ Peter A. Corsale
        PETER CORSALE (#57220)
        100 S. Fourth Street, Ste. 1000
        St. Louis MO  63102
        (314) 889-8000
        Fax No.: (314) 231-1776
        pcorsale@polsinelli.com

        *ATTORNEYS FOR PLAINTIFF*
        *ECO-SITE II, LLC*